IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VERONICA WALKER, et al.          *

        Plaintiffs          *

        vs.          * CIVIL ACTION NO. MJG-16-3136

STATE OF MARYLAND, et al.          *

        Defendants          *

*     *     *     *     *     *     *     *

MEMORANDUM AND ORDER RE: DISMISSAL MOTIONS

The Court has before it Defendants[1] State of Maryland, et al.'s Motion to Dismiss Or, In the Alternative, Motion for Summary Judgment [ECF No. 47], Defendant Reginald Heavener's Motion to Dismiss [ECF No. 50], and the materials submitted relating thereto. The Court finds that a hearing is unnecessary.

I.   BACKGROUND

On September 13, 2013, inmate Jason Wallace ("Wallace" or "Decedent") was beaten to death by his cellmate, Darnell Thompson ("Thompson"), in their cell at Western Correctional Institution. Thompson was later convicted of second degree murder for the death of Wallace. Wallace's parents, Veronica

---

[1] Defendants State of Maryland, Roderick R. Sowers, Frank B. Bishop, Jr., Captain George Sneathen, William May, David Stevey, and Drew Cook.

Walker[2] and Gilbert Wallace, and his surviving minor children, V.W. and K.W., (collectively, "Plaintiffs"), bring the instant suit against the State of Maryland, the former Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS") Gary D. Maynard, the Director of Corrections Roderick R. Sowers, the former Warden Frank B. Bishop, Jr., Captain George Sneathen, Correctional Officer William May, Correctional Officer Reginald Heavener, Correctional Officer David Stevey, Correctional Officer Drew Cook, and three "John Doe" Correctional Officers (collectively, "Defendants"). Plaintiffs present federal and state constitutional claims and state law damages claims.

By the instant Motions, Defendants seek dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment pursuant to Rule 56.[3] The Court finds the summary judgment motion premature and disallows it without prejudice.

As discussed herein, the Court finds that the Complaint[4] does not adequately state a plausible claim against the State of Maryland or any individual Defendant. The State of Maryland is

---

[2]    Individually and as Personal Representative of the Estate of Jason Wallace.

[3]    Defendant Heavener's separate Motion [ECF No. 50] does not request summary judgment.

[4]    References herein to "Complaint" are to the redacted Complaint [ECF No. 3].

immune from suit in federal court on the claims at issue by virtue of the Eleventh Amendment. Each Individual Defendant[5] is entitled to dismissal due to the absence of factual allegations adequate to present a plausible claim against him. Because it may be possible for Plaintiffs to draft an adequate Complaint against some, if not all, of the Individual Defendants, the Court shall provide them the opportunity to file an Amended Complaint asserting such claims, if any, they adequately can present therein.[6]


II.  DISMISSAL STANDARD

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)[7] tests the legal sufficiency of a complaint. A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citations omitted). When

---

[5]  Roderick R. Sowers, Frank B. Bishop, Jr., Captain George Sneathen, William May, David Stevey, Reginald Heavener, and Drew Cook.

[6]  Plaintiffs state, for some unspecified reason that they consent to dismissing their § 1983 claims against all Defendants except the State and Officer Heavener. Pls.' Opp. [ECF No. 70-1] at 10.  This statement does not bar Plaintiffs from asserting any such claims in the Amended Complaint.

[7]  All "Rule" references herein are to the Federal Rules of Civil Procedure.

evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff. However, conclusory statements or a "formulaic recitation of the elements of a cause of action" will not suffice. Id. A complaint must allege sufficient facts to "cross 'the line between possibility and plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009)(quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Thus, if the well-pleaded facts contained within a complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

Generally, a motion to dismiss filed under Rule 12(b)(6) cannot reach the merits of an affirmative defense. Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). However, affirmative defenses are appropriate to consider at the Rule 12(b)(6) stage "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013) (emphasis

added) (quoting <u>Brockington v. Boykins</u>, 637 F.3d 503, 506 (4th Cir. 2011)).

III. <u>DISCUSSION</u>

    A. <u>Factual Allegations</u>[8]

At times relevant hereto, Jason Wallace was incarcerated at the Maryland Western Correctional Institution ("WCI"). Prior to September 3, 2013, Wallace was assigned by someone not identified to a cell occupied by one Darnell Thompson ("Thompson") in Housing Unit #3 B-Wing. The Complaint alleges "upon information and belief" that Wallace was assigned by some unspecified Defendant to share the cell with Thompson, then serving a life sentence for murder, intentionally as retaliation for an "earlier altercation" between Wallace and a WCI staff member. ¶[9] 27. Moreover, Thompson had been charged with and convicted of two crimes committed while he was incarcerated — reckless endangerment in 2002 and second degree assault on law enforcement in 2009. ¶¶ 32-33. Thompson had a history of violence in prison, including attacking inmates, and it was well-known that he suffered from a mental illness. Thompson allegedly "ate foreign objects, put strange materials in his

---

[8]    The "facts" are stated herein as alleged in the Complaint and are not necessarily agreed to by Defendants.
[9]    All "¶" references herein are to paragraphs in the Complaint [ECF No. 3].

hair, would constantly talk to himself, talked about hurting others, and walked around the prison and pretended like he was shooting others." ¶ 34.  Despite these behaviors, Thompson was not assigned to a single cell or put in segregated housing.

Wallace reported to an unspecified person at unspecified times Thompson's "unbalanced behavior" and threats against Wallace of "impending violence and/or death and other strange and irrational behavior." ¶ 31.

On September 3, 2013, Wallace wrote a letter to his family wherein he stated that he was concerned for his safety and wanted to be transferred into a different cell. ¶ 26.  The Complaint does not allege that Wallace requested a transfer in the institution.

On the night of Wallace's murder, September 13, 2013, the video cameras in Housing Unit #3 B-Wing were broken and not functioning. ¶ 50.

On September 13, 2013, Defendant Captain George Sneathen was the highest ranking official in charge of B-Wing.  Defendant Officer Drew Cook was the Officer in Charge of B-Wing, and Defendants Officers Stevey, Heavener, and May were assigned as officers "responsible for the supervision, inspection, search, and placement of inmates assigned to Housing Unit #3 B-Wing." ¶¶ 40-42.

After dinner on September 13, Wallace and Thompson were locked in their cell. An unidentified officer conducted a head count. Sometime between 6:00 and 6:30 p.m., Thompson was taken out of his cell by Defendant Stevey to the Special Housing Observation Unit for urinalysis testing.[10] ¶ 47. Defendant Stevey did not observe the cell when he took Thompson to the Observation Unit. Id.

At some time after the head count and before the time when Thompson was summoned out of his cell, Thompson brutally assaulted and killed Wallace. During the assault, there was a "prolonged struggle, yelling for help, suspicious movement and/or noises emanating" from Wallace's cell. ¶ 46. The Complaint does not allege where Officers Sneathen, Cook, Heavener, Stevey, and May were located during this time. Nor is there any factual allegation as to whether they saw or heard anything regarding the altercation. No Officer took any action to stop the attack.

In the Observation Unit, Thompson was strip searched by someone who observed blood on his clothing and that his shirt was ripped. ¶ 47.

Allegedly "up to an hour" after Thompson had left the cell,

---

[10]    It is unclear from the Complaint and briefs whether Plaintiffs are alleging that Officer Stevey or any other Officer actually went to Thompson's cell or saw inside.

another inmate told Defendants Heavener and May that Wallace was lying on his cell floor, unresponsive, coughing up blood, and having trouble breathing. ¶ 48.  The Complaint alleges that Defendants (presumably Heavener and May) at approximately 8:10 PM discovered Wallace's body in the floor of his cell. Wallace's head and chest were under his bunk and blood was around his body.  "Decedent's entire facial area was reduced to mush, his face and forehead had a noticeable deformity, brain matter was exposed, and his jaw was broken." ¶ 43.  Wallace died from his injuries.

B. <u>Procedural Posture</u>

On September 12, 2016, Gilbert Wallace and Veronica Walker, Individually and as Personal Representative of the Estate of Jason Wallace, filed the instant Complaint [ECF No. 3].  On June 22, 2017, this Court granted Minor Plaintiffs V.W. and K.W.'s Motion to Intervene in the case as potential wrongful death beneficiaries. <u>See</u> Order Re: Intervention [ECF No. 78].

In the Complaint, Plaintiffs assert claims in Seven Counts:

| Count I | Violation of 42 U.S.C. § 1983 |
| Count II | Violation of Maryland Declaration of Rights Articles 24 and 26 |
| Count III | Wrongful Death |
| Count IV | Survival Action |

Count V           Negligence

Count VI          Gross Negligence

Count VII         Funeral Expenses

Compl. [ECF No. 3].

On March 6, 2017, Defendant State of Maryland and the Individual Defendants, other than Reginald Heavener and the "John Doe" Defendants,[11] filed the instant Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment [ECF No. 47]. On the same day, Defendant Heavener filed his separate Motion to Dismiss [ECF No. 50].  All movants seek dismissal of all Counts.

## C. Sovereign Immunity — the Eleventh Amendment

Defendant State of Maryland contends that it is immune from Plaintiffs' claims in this suit by virtue of the Eleventh Amendment to the Constitution of the United States.  The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State."  U.S. Const. amend. XI.  Thus, unconsenting states are immune from suit in federal court, even by their own

---

[11]    The unnamed "John Doe" Defendants, identified as Officer #1, Officer #2, and Officer #3 in the Complaint, have not been identified, nor are they stated to be movants of the instant motions to dismiss.

citizens, absent an exception. See <u>Lee-Thomas v. Prince</u>

<u>George's Cty. Pub. Sch.</u>, 666 F.3d 244, 248-49 (4th Cir. 2012).

None of the exceptions are applicable here.

> Congress did not abrogate States' Eleventh
> Amendment immunity for 42 U.S.C. § 1983
> claims. See <u>Will v. Michigan Dep't of State</u>
> <u>Police</u>, 491 U.S. 58, 65-66, 109 S.Ct. 2304,
> 105 L.Ed.2d 45 (1989) (finding that a state
> is not a person within the meaning of § 1983
> and that Eleventh Amendment bars § 1983
> suits unless the state has waived its
> immunity). The second exception is
> inapplicable here because Plaintiffs are not
> seeking any prospective injunctive relief,
> but instead only damages. Finally, the State
> of Maryland has not waived its Eleventh
> Amendment immunity in this case.

<u>Hodge v. Coll. of S. Maryland</u>, 121 F. Supp. 3d 486, 495 (D. Md.

2015)(involving Fourteenth Amendment claim against State of

Maryland). "The waiver of sovereign immunity in the Maryland

Torts Claims Act clearly limits the state's waiver of immunity

to actions brought in the Maryland state courts. A state's

waiver of immunity from suit in state court 'is not enough to

waive the immunity guaranteed by the Eleventh Amendment.'"

<u>Weller v. Dep't of Soc. Servs. for City of Baltimore</u>, 901 F.2d

387, 397-98 (4th Cir. 1990)(citations omitted)(quoting

<u>Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 241 (1985));

see also <u>Hyde v. Maryland State Bd. of Dental Examiners</u>, No.

1:16-CV-02489-ELH, 2017 WL 2908998, at *7 (D. Md. July 7,

2017)(Hollander, J.).

Accordingly, the Eleventh Amendment bars Plaintiffs from pursuing this suit against the State of Maryland in federal court.  All claims against the State shall be dismissed.

In addition, the Eleventh Amendment also precludes suits brought against state employees in their official capacities because, in those circumstances, the State is the real, substantial party in interest. See Brandon v. Holt, 469 U.S. 464, 471-72 (1985).

> Thus, "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief.

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984)(internal citations omitted).  Accordingly, all federal claims[12] against the Individual Defendants in their official capacities shall be dismissed.

The Court will herein discuss all claims against the Individual Defendants asserted against them in their individual capacities.

---

[12]    "The official/individual capacity distinction that is a part of 42 U.S.C. § 1983 does not apply to Maryland constitutional violations." Barbre v. Pope, 935 A.2d 699, 703 n.4 (Md. 2007).

D. Count I — Federal Constitutional Claims

Plaintiffs assert claims pursuant to 42 U.S.C. § 1983 for alleged violations of the rights provide by the Eighth and Fourteenth Amendments to the United States Constitution.

Section 1983 provides in pertinent part:

> Every person who, under color of [state law] subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983 (2012).

To establish a § 1983 claim, a plaintiff must prove that a defendant:

1. Acted under color of state law,

2. Deprived him/her of a right secured by the Constitution, and

3. Is not entitled to qualified immunity.[13]

### 1. Color of State Law

There is no doubt that all pertinent actions of Defendants were performed under color of state law, i.e., as state officials.

---

[13] That is, the right must have been clearly established at the time of events at issue. See Graham v. Gagnon, 831 F.3d 176, 182 (4th Cir. 2016).

## 2. <u>Deprivation of Rights</u>

### a. <u>Eighth Amendment Violation</u>

Plaintiffs claim that Defendants violated Wallace's Eighth Amendment rights by failing to protect him from Thompson and by inadequately attending to his medical needs after the attack.

The Eighth Amendment to the United States Constitution provides:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Complaint asserts that Defendants violated Wallace's Eighth Amendment rights by

> failing to protect Decedent from physical harm inflicted by Thompson, despite specific knowledge of Thompson's history of violence prior to and while in prison, his history of acting-out while in prison and other attempts and/or threats to severely injure and/or murder other inmates and staff at Western Correctional, in direct violation of Western Correctional's policies, procedures, and protocol.

¶ 61.

"The Eighth Amendment imposes a duty on prison officials 'to protect prisoners from violence at the hands of other prisoners.'" <u>Odom v. S.C. Dep't of Corr.</u>, 349 F.3d 765, 770 (4th Cir. 2003)(quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994)). To establish a failure to protect claim under the Eighth

Amendment's prohibition of cruel and unusual punishment, a
plaintiff must prove that:

1. there was a "sufficiently serious" deprivation, and

2. the defendants had a "sufficiently culpable state of
   mind."

Farmer, 511 U.S. at 834.

To meet the first part of the test, "the inmate must show
that he is incarcerated under conditions posing a substantial
risk of serious harm." Id. "[T]o demonstrate such an extreme
deprivation, a prisoner must allege a serious or significant
physical or emotional injury resulting from the challenged
conditions . . . ." Odom, 349 F.3d at 770 (alteration in
original)(quoting De'Lonta v. Angelone, 330 F.3d 630, 634 (4th
Cir. 2003)). Here, Wallace died as a result of the challenged
condition of being forced to share a cell with an allegedly
violent, mentally unstable inmate. Thus, Plaintiffs have
adequately alleged the element of serious harm. See Parker v.
Maryland, 413 F. App'x 634, 638 (4th Cir. 2011)("Since Parker
was murdered while in custody, the first part of the test is
clearly satisfied.").

For the second test, the requisite state of mind "is one of
'deliberate indifference' to inmate health or safety." Farmer,
511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 297
(1991)). Deliberate indifference "entails something more than

14

mere negligence" but it can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. at 835. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." Id. at 836. Courts apply a subjective standard, under which "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Thus, the Court must decide whether the Complaint presents adequate allegations to make plausible an inference that a specific Individual Defendant was aware of facts upon which he could draw an inference that a substantial risk of serious harm existed either before or during Thompson's attack, and that the Defendant actually drew such an inference. The Court may consider as facts only non-conclusory factual allegations in the Complaint.[14]

According to the Complaint, it was well-known that Thompson was generally violent, mentally unstable, and threatening. Additionally, Wallace reported to someone that Thompson had

---

[14]    The Court may not take into consideration any materials or exhibits attached to the parties' Motions or facts included in the Motions that were not included in the Complaint.

threatened him.  Also, the Complaint alleges that Wallace was purposely assigned to Thompson's cell as retribution for an altercation with an unidentified staff member.  As for the attack itself, the Complaint alleges that there were sounds and signs of an altercation in Wallace's cell when he was being beaten, and that Defendant Stevey should have noticed something was awry when Thompson left the cell to go to the Observation Unit.

The Complaint presents no factual allegations that adequately connect alleged tortious actions or relevant knowledge with any particular Individual Defendant.  To state a claim against an individual under § 1983, a plaintiff must show "that the official charged acted personally in the deprivation of the plaintiffs' rights."  Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)(quoting Bennett v. Gravelle, 323 F. Supp. 203, 214 (D. Md. 1971), aff'd 451 F.2d 1011 (4th Cir. 1971)).  To the extent the Complaint purported to present any claims against the Warden, the Secretary of the Department of Public Safety and Correctional Services, or other supervisors, respondeat superior liability does not apply in § 1983 cases.  See Monell v. Department of Social Services, 436 U.S. 658, 691 (1978); Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004); see also Eastman v. Warden, Baltimore City Det. Ctr., No. CIV.A. CCB-10-2389, 2011 WL 210343, at *2 (D. Md. Jan. 21,

2011)(finding an inmate's claim against the Warden defective when the inmate "raises no allegations in the complaint against the Warden").  There must be a personal connection between the Defendants and the denial of Wallace's constitutional rights.

The Complaint does not clearly, if at all, allege who did what and who knew what regarding Thompson's behavior and alleged threats.  The Complaint does not state who it was that assigned Wallace to Thompson's cell as retaliation, with whom Wallace had an altercation, or who knew the pertinent facts.  The Complaint also fails to allege which Defendants were present on Housing Tier #3 B-Wing and where they were located at the time of the assault so as to present a plausible claim that they knew[15] that an assault was happening yet failed to take possible action or provide medical care to help Wallace.

Therefore, the Complaint does not adequately present a plausible claim for violation of the Eighth Amendment against any of the Individual Defendants.  Accordingly, Plaintiffs' Eighth Amendment claims in Count I shall be dismissed.

However, the Court cannot determine on the present record whether Plaintiffs can plead a plausible Eighth Amendment claim against one or more of the Individual Defendants and shall

---

[15]    The non-operational state of the cameras is a fact that cuts against Plaintiffs' claim that Defendants contemporaneously were aware of the assault.

provide them an opportunity to file an Amended Complaint to attempt to do so.

### b. Fourteenth Amendment Violation

The Fourteenth Amendment to the United States Constitution provides, in pertinent part:

> No State shall . . . deprive any person of life, liberty, or property, without due process of law.

U.S. Const. amend. XIV, § 1.

In the Complaint, Plaintiffs state that the Defendants violated Wallace's Fourteenth Amendment "right to be free from the deprivation of life and liberty without due process of law." ¶ 62. This claim is based upon Wallace's death at the hands of Thompson and stems from Plaintiffs' Eighth Amendment failure to protect and render aid claims. Plaintiffs have not alleged that Wallace was denied any procedural rights, and have not made out any procedural due process claim. An inmate's Fourteenth Amendment substantive due process claim is essentially equivalent to an Eighth Amendment claim.[16]

---

[16]   Cf., Hill v. Nicodemus, 979 F.2d 987, 990-91 (4th Cir. 1992); Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001); King-Fields v. Leggett, No. CIV.A. ELH-11-1491, 2014 WL 694969, at *10 (D. Md. Feb. 19, 2014)(Hollander, J.)(applying Eighth Amendment standards used to assess claims brought by convicted prisoners to Fourteenth Amendment claims asserted by pretrial detainees).

To state a substantive due process claim, a plaintiff must allege that a defendant abused executive power in a way that "shocks the conscience" because of its egregiousness. Cty. of Sacramento v. Lewis, 523 U.S. 833, 846–47 (1998). The deliberate indifference standard used in Eighth Amendment cases may also "satisfy the fault requirement for due process claims." Id. at 850. Allegations of negligent lack of due care by prison officials do not trigger procedural or substantive due process protections.[17] Davidson v. Cannon, 474 U.S. 344, 348 (1986).

The Complaint contains allegations that possibly could present a plausible claim of violation of Wallace's due process rights by a particular Defendant who knowingly maliciously assigned Wallace to share a cell with Thompson, an allegedly well-known violent and mentally unstable individual, with knowledge that Thompson had threatened Wallace, or who knew that a violent beating was occurring in Wallace's cell, yet intentionally failed to intervene or provide aid. However, the allegations in the Complaint regarding the Fourteenth Amendment claims suffer from the same defects as the Eighth Amendment

---

[17]    Thus, any claims based upon negligent failure to follow policies or provide adequate resources or staff are constitutionally insufficient.

claims in that the allegations fail to connect concrete actions and knowledge with specific individuals.

Therefore, Plaintiffs' Fourteenth Amendment claims in Count I shall be dismissed.[18]  Nevertheless, the Court shall provide Plaintiffs the opportunity to file an Amended Complaint to attempt to file plausible claims against one or more of the individual Defendants.

E. Counts II - VII — State Law Claims

In Counts II through VII, Plaintiffs state claims under the Maryland Declaration of Rights Articles 24[19] and 26,[20] and common law claims of wrongful death, a survival action, negligence, gross negligence, and funeral expenses.

The Declaration of Rights claims are essentially duplicative of the federal constitutional claims under Count I.[21]

---

[18]    In light of the inadequate allegations against any Individual Defendant, the Court shall refrain from considering the application of qualified immunity at this time.
[19]    "[N]o man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges. . . or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Md. Const. Decl. of Rts. art. XXIV.
[20]    "[A]ll warrants, without oath or affirmation, . . . to seize any person or property, are grievous and oppressive." Md. Const. Decl. of Rts. art. XXVI.
[21]    Although Plaintiffs nominally bring claims pursuant to Articles 24 and 26 of the Maryland Declaration of Rights, the substance of their claims seems to fall under Article 25, the analogue to the Eighth Amendment.  Article 25 provides,

See <u>Okwa v. Harper</u>, 757 A.2d 118, 140–41 (Md. 2000).

Defendants assert that Plaintiffs' state law claims must fail because, among other things, Plaintiffs have failed to comply with the notice provision of the Maryland Tort Claims Act ("MTCA"), and additionally, that the Individual Defendants are entitled to MTCA statutory immunity from Plaintiffs' state constitutional and common law claims.

1. <u>MTCA Notice Provision</u>

Section 12-106(b) of the MTCA provides, subject to certain exceptions not here pertinent, that "a claimant may not institute an action under this subtitle unless:

    (1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury to person or property that is the basis of the claim;

    (2) the Treasurer or designee denies the claim finally; and

    (3) the action is filed within 3 years after the cause of action arises."

Md. Code Ann., State Gov't § 12-106(b) (2014 Repl. Vol.).

However, a claimant may sue a state official without providing notice under the MTCA if the claimant

---

"That excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted, by the Courts of Law."
Md. Const. Decl. of Rts. art. XXV.

sufficiently alleges malicious or grossly negligent

conduct.  See Barbre v. Pope, 935 A.2d 699, 714 (Md. 2007).

Plaintiffs allege in their Opposition brief that they

complied with the notice provision, but failed to plead

such compliance. Pls.' Opp'n [ECF No. 70] at 31. Plaintiffs

may correct this oversight in an Amended Complaint.


2. Statutory Immunity

Section 12-105 of the MTCA provides that "State

personnel shall have the immunity from liability described

under § 5-522(b) of the Courts and Judicial Proceedings

Article." Md. Code Ann., State Gov't § 12-105.  That

provision states:

> State personnel, as defined in § 12-101 of
> the State Government Article, are immune
> from suit in courts of the State and from
> liability in tort for a tortious act or
> omission that is within the scope of the
> public duties of the State personnel and is
> made without malice or gross negligence.

Md. Code Ann., Cts. & Jud. Proc. § 5-522(b)(2013 Repl. Vol.)

(emphasis added).  "If 'State personnel' perform a negligent

act, for which the State has waived immunity, then 'State

personnel' are immune from suit." Conaway v. State, 672 A.2d

162, 172 (Md. Ct. Spec. App. 1996); see also Young v. City Of

Mt. Ranier, 238 F.3d 567, 578 (4th Cir. 2001).  This statutory

immunity extends to claims for violations of the state

constitution.  See Lee v. Cline, 863 A.2d 297, 310 (Md. 2004).

"State personnel" includes "a State employee or official who is paid in whole or in part by the Central Payroll Bureau in the Office of the Comptroller of the Treasury."  Md. Code Ann., State Gov't § 12-101(a)(1).  There has been presented no reason why the Individual Defendants[22] are not state employees or should not qualify as "state personnel."  Cf. Cooper v. Rodriguez, 118 A.3d 829 (Md. 2015)(applying MTCA immunity analysis to claims against state correctional officers).

Thus, Plaintiffs' negligence claims in Count V, and any other common law claims based on negligent conduct, shall be dismissed because the Individual Defendants are immune from such claims.

However, the scope of statutory immunity does not extend to tortious actions committed with malice or gross negligence.

"Malice" for statutory immunity purposes "requires a showing that 'the official intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately injure the plaintiff'" and "may be inferred from the surrounding circumstances."  Talley v. Farrell, 156 F. Supp.

---

[22]    The Individual Defendants positions are as follows: Secretary of the Maryland DPSCS, Director of Corrections, Warden of WCI, Captain at WCI, and Correctional Officers at WCI.

2d 534, 545 (D. Md. 2001)(citations omitted)(quoting <u>Green v.</u>
<u>Brooks</u>, 725 A.2d 596, 610 (Md. Ct. Spec. App. 1999)).
Plaintiffs "'must allege with some clarity and precision those
facts which make the act malicious.'" <u>Id.</u>

Gross negligence, in the context of statutory immunity, has
been defined as:

> something more than simple negligence, and
> likely more akin to reckless conduct; gross
> negligence is "an intentional failure to
> perform a manifest duty in reckless
> disregard of the consequences as affecting
> the life or property of another, and also
> implies a thoughtless disregard of the
> consequences without the exertion of any
> effort to avoid them."

<u>Cooper</u>, 118 A.3d at 845-46 (quoting <u>Barbre</u>, 935 A.2d at 717).

As described herein, the conduct and knowledge alleged in
the Complaint, particularly the allegation that Wallace was
deliberately assigned to Thompson's cell as punishment, might
present against one or more of the Individual Defendants a
plausible claim of malice or gross negligence necessary to
overcome statutory immunity. Nevertheless, as stated before,
the Complaint as drafted suffers from a lack of adequate
particularity as to which specific individual Defendants could
be held to have had malice or acted with gross negligence.

Accordingly, Count II (Maryland Declaration of Rights),
Count III (wrongful death), Count IV (survival action), Count V
(negligence), and Count VI (gross negligence) shall be dismissed

against the Individual Defendants.[23]   Plaintiffs may, however, include any adequately presented Maryland law claims against individual Defendants in the permitted Amended Complaint.

### 3. Count VII — Funeral Expenses

Plaintiffs assert a claim as a separate Count for recovery of funeral expenses.  A personal representative may recover funeral expenses, in addition to other damages, in a survival action pursuant to § 7-401(y) of the Estates and Trusts Article. Md. Code Ann., Est. & Trusts § 7-401(y) (2011 Repl. Vol.). Thus, a separate cause of action for funeral expenses is included within and essentially duplicative of Plaintiffs' § 7-401 survival action asserted in Count IV.

Accordingly, the claims in Count VII shall be dismissed.

IV.  <u>CONCLUSION</u>:

For the foregoing reasons:

1. Defendants' Motion to Dismiss, Or In the Alternative, for Summary Judgment [ECF No. 47] and Defendant Reginald Heavener's Motion to Dismiss [ECF No. 50] are GRANTED.

2. All claims in Plaintiffs' Complaint [ECF No. 3] are DISMISSED.

---

[23]   Because the Court finds that the Individual Defendants are entitled to statutory immunity, it is not necessary for the Court to address Defendants' public official immunity defenses. <u>But see</u> <u>Cooper</u>, 118 A.3d at 849 (holding that gross negligence is an exception to public official immunity).

3. The following claims are dismissed with prejudice:

    a. All claims against the State of Maryland;

    b. Count V (Negligence); and

    c. Count VII (Funeral Expenses).

4. Plaintiffs may, by October 15, 2017, file an Amended Complaint consistent with this opinion.


SO ORDERED, this <u>Wednesday, August 30, 2017</u>.


_____/s/_____<br>
Marvin J. Garbis<br>
United States District Judge